UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC V. HARDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-cv-00581-TWP-TAB |
| | ) |
| MARION COUNTY SHERIFF'S | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Marion County Sheriff's Department's ("Sheriff's Department") Motion for Summary Judgment (Dkt. 38). Plaintiff, Eric V. Harden ("Harden"), filed a claim against the Sheriff's Department alleging that he was terminated in retaliation for participating in an investigation into alleged discriminatory treatment of certain minority deputies in the Sheriff's Department, and for filing his own claim for retaliation, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) ("Title VII"). The Sheriff's Department claims that Harden was terminated for allegedly stealing money from an arrestee's wallet during processing. For the reasons set forth below, the Sheriff's Department's motion is **GRANTED**.

### I. BACKGROUND

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Harden as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Harden, a white male, was hired by the Sheriff's Department as a deputy on November 1, 2008, and remained in that position until his discharge on December 23, 2010. He primarily served as a building deputy providing security at the City-County Building in Marion County, Indiana. Unlike many other building deputies, Harden was a sworn police officer with extensive experience in law enforcement.

In February 2010, Harden was interviewed as part of an investigation into complaints of race discrimination brought by three African-American deputies. During the interview, Harden stated that he had seen and heard the two accused supervisors, Lieutenant Tammy Nelson ("Lt. Nelson") and Corporal James Russo ("Cpl. Russo"), being disrespectful to several African-American deputies. Soon after giving his statement regarding the alleged discrimination against the African-American deputies, Lt. Nelson and Cpl. Russo began to harass Harden. Deputy Chief Shirley Challis also engaged in this harassment. As a result, Harden filed a complaint with the City-County's Equal Employment Opportunity ("EEO") Office, alleging retaliation. An investigation was completed, which included the taking of Harden's statement. Following his EEO complaint, the alleged harassment by his superiors ceased. As a result of the first investigation, in May 2010, both supervisors were demoted, reassigned and removed from Harden's chain of command.

On November 29, 2010, Harden was providing security for the drug lab within the City-County Building where probationers go to provide urine samples as a condition of their probation. On that day, Victor Rybolt ("Rybolt") arrived at the City-County Building with his ten-year-old child. Harden informed Rybolt that his child could not go into the testing site and could not wait outside the testing area unsupervised. Rybolt left the City-County Building with his child and minutes later returned to the City-County Building alone. Harden questioned

Rybolt about the whereabouts of his child. Rybolt then led Harden and another deputy out of the building and took them to his truck in the parking lot adjacent to the building, where his child was sitting unattended. Harden then arrested Rybolt for neglect of a dependent.

Harden escorted Rybolt back into the City-County Building to Room 101 to begin processing. In a search incident to arrest, Harden found and searched a wallet in Rybolt's pocket along with other items, including keys and a cell phone. Harden removed Rybolt's driver's license, which he needed in order to contact the Department of Child Services ("DCS"). Harden placed all of the items on top of a computer console directly in front of Rybolt and then started filling out arrest paperwork at one of the desks in the room. Deputy Temalo Woods ("Deputy Woods") and Deputy Tim Davis ("Deputy Davis") then searched Rybolt's wallet and counted the cash as part of the prisoner property inventory. Rybolt witnessed the two deputies count his cash, and it was discovered that he had $182.00 in the form of a one hundred dollar bill and other smaller denominations.

After the money was counted, Deputy Woods put the wallet with the money into a clear plastic property bag with the rest of Rybolt's property and placed it, unsealed, on the desk in full view of Rybolt. Rybolt and Deputy Woods claim that Harden picked up the property bag and took it into another room where he was alone for eight to fifteen minutes. Harden states that he did go into an adjacent room to call DCS, but denies taking the property bag with him. When Harden returned to Room 101, he escorted Rybolt, along with the now sealed property bag, to the paddy wagon to be transported to the Arrestee Processing Center.

The next day, Rybolt was released from the Arrestee Processing Center. As part of his release, two officers opened his sealed property bag. Rybolt immediately realized that his $100.00 bill was missing from his wallet. Rybolt returned to Room 101 of the City-County

3

Building and filed a complaint with the Sheriff's Department regarding the missing property. The Internal Affairs division of the Sheriff's Department conducted an investigation during December 2010. Several employees, who were present at the time of Rybolt's arrest and detention, including Harden, were interviewed, and a statement was taken from Rybolt. Importantly, none of Rybolt's arrest paperwork identified how much cash was in his wallet, which included three separate forms on which the amount should have been noted.

When Harden, as the arresting officer, was questioned about why he did not include the amount of cash in Rybolt's possession on the arrest paperwork, he stated that he was only required to fill out that section of the report if the amount was over $500.00. However, Harden was unable to explain how he knew that Rybolt did not have $500.00 if he claimed to have never seen or handled the money. Also, as part of the investigation, the Internal Affairs investigators obtained copies of all of the Officer Arrest Reports ("OAR") filed by Harden for 2010, and on fifty-seven of the fifty-nine reports, Harden noted a specific amount of cash in the possession of each arrestee, including one report where he noted that an arrestee had $0.25 in change at the time of his arrest. The OARs were in direct contradiction to Harden's response regarding why he omitted the amount of money in Rybolt's possession on his arrest paperwork. As a result of the Internal Affairs investigation, the Sheriff's Department concluded that Harden should be terminated for theft and mishandling of Rybolt's arrest. The incident was also reported to the Marion County Prosecutor's office, but the prosecutor declined to file theft charges against Harden. Additional facts will be discussed below, as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties … nor the existence of some metaphysical doubt as to the material facts … is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

As a preliminary matter, in its Reply (Dkt. 53), the Sheriff's Department asks the Court to ignore or strike portions of Harden's designated evidence on the basis that it contains inadmissible hearsay. The Court acknowledges that it may only consider evidence and statements that would be admissible at trial and that have probative value. Accordingly, the Court will consider facts to the extent admissible evidence supports them.

Harden alleges that he was terminated in retaliation for participating in the investigation of discriminatory conduct against African-American deputies, and in retaliation for subsequently

5

filing his own retaliation complaint. The Sheriff's Department asserts that Harden was legitimately terminated based on the results of an investigation into theft of an arrestee's property.

Title VII prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII. 42 U.S.C. §2000e-3(a). A plaintiff may establish a *prima facie* case of retaliation using either the direct or indirect method. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. *Id.* at 644. This may be done via direct evidence, which would entail something akin to an admission by the employer. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Because such admissions are rare, proof under the direct method may also be accomplished by presenting a "convincing mosaic" of circumstantial evidence that would permit the same inference without the employer's admission. *Id.*

> A convincing mosaic must include evidence from which an inference of retaliatory intent could be drawn . . . includ[ing]: '(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.'

*Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013) (quoting *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659-60 (7th Cir. 2013)). These "bits and pieces" must be put into context and viewed as a whole; one piece alone will be insufficient to withstand a motion for summary judgment. *Hobgood*, 731 F.3d at 644.

Under the indirect method, the plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse action from the employer; and (4) he was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *Id.* at 642; *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Under this method, once the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate reason for the adverse employment action. *Haywood*, 323 F.3d at 531. Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.* Based upon the Supreme Court's recent decision in *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013), Harden must be able to prove to a reasonable jury that retaliation was the "but for" cause of his termination, not merely a motivating factor, which is the standard that applies to status-based discrimination claims under Title VII. 133 S.Ct. at 2532-33. Harden alleges that he can prove his case using both the direct and the indirect methods of proof.

**A.      Harden's claim fails under the direct method**

Harden has not presented sufficient evidence to raise a question of fact from which a reasonable jury could conclude that retaliation was the "but for" cause of his termination. There is no dispute that Harden engaged in a statutorily protected activity and that his termination constituted an adverse employment action. Harden argues that he was subjected to a "pattern of unreasonable discipline" when he was disciplined on at least two occasion for insubordination. Additionally, he contends he was reassigned to less desirable posts soon after giving his EEOC statement in February 2010. Specifically, his "float" time was taken away and "float" time was

desirable because it relieved the officer from the tedium of standing on his feet at a single post. He was also removed from the prestigious assignment at the front desk of the Mayor's office. However, Harden has not shown that this reassignment or discipline constituted an adverse employment action.

To constitute an adverse employment action, the action must be a significant change in the employee's status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits. *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007) (citing *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000)). While they may have been undesirable, Harden's reassignment and discipline did not rise to the level of an adverse employment action, as they did not result in any significant change in his employment status.

With regard to his termination, Harden argues that he can show retaliatory animus based upon the manner in which the Sheriff's Department conducted the investigation into the theft of Rybolt's money, arguing that it is proof that the reason given for his termination was pretextual. Harden makes a rather lengthy argument about the manner in which the investigation was conducted and how it should have been conducted, essentially arguing the merits of the theft accusations and the conclusions of the Internal Affairs department's investigation. However, the Court's role is not to "sit as a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (quoting *Culver v. Gorman*, 416 F.3d 540, 547 (7th Cir. 2005)). The courts are not concerned with whether an employer's decision is correct or reasonable, only whether the employer provided an honest explanation for its action. *Id*.

Harden argues that the Sheriff's Department could not have believed its stated reason for his termination. However, Harden must offer something more than mere speculation regarding the Sheriff's Department's motives; he must be able to "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [Defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). Harden asserts that the Sheriff's Department immediately focused on him as a suspect in the theft despite Rybolt's alleged identification of another officer, Lieutenant Maurice Frazier ("Lt. Frazier"), as the deputy who took the money out of his wallet. Harden does not present any admissible evidence in support of this argument. The only "evidence" that Harden presented regarding Rybolt's alleged accusation of Lt. Frazier is the declaration of Ashlie Lair-Holland, who was the administrative assistant working in Room 101 at the time of Rybolt's complaint, in which she stated that Rybolt came in, pointed to Lt. Frazier and stated "that colored boy took my money." Dkt. 46-4. However, this statement constitutes inadmissible hearsay, and therefore cannot be used to support Harden's opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."). Harden has not pointed to any other admissible evidence that would place the Sheriff's Department's explanation of the reason for his termination in doubt.

Even if the evidence regarding Rybolt's alleged accusation of Lt. Frazier were admissible, it still does not show that the Sheriff's Department's reason for terminating Harden was not honest or legitimate. The Internal Affairs department interviewed several people before

concluding that Harden was most likely responsible for the theft; it was not, as Harden characterizes it, an immediate accusation without any investigation. The Internal Affairs report cites several reasons for Harden's termination, including violations of several rules and regulations of the Sheriff's Department, not just the alleged theft. *See* Dkt. 39-4 at 11-14. All of these bases are supported by consistent explanations in the report based upon their investigation. Dkt. 39-4. Whether the Sheriff's Department can conclusively prove that Harden stole Rybolt's money, or whether the investigation could have been conducted in a different manner, is irrelevant; it is not the Court's job to second-guess the Sheriff's Department's investigatory procedures without any evidence of "weaknesses, implausibilities, inconsistencies, or contradictions" that would lead a reasonable person to conclude they are "unworthy of credence." *Boumehdi*, 489 F.3d at 792. Harden has not presented sufficient evidence from which a reasonable jury could conclude that the reason for his termination was pretext, and that there is a "but for" causal connection between his protected activity and his termination. Thus, the Court finds that Harden has not presented a "convincing mosaic" of evidence to prove retaliation under the direct method.[1]

### B. Harden cannot prove retaliation under the indirect method

Harden also asserts that he can prove his retaliation claim under the indirect method using the *McDonnell-Douglas* analysis. As stated above, the first and third elements are not in dispute;

---

[1] Harden asks the Court to make a negative inference against the Sheriff's Department because they failed to produce the audio tapes of the witnesses' interviews from the theft investigation, and that possible discrepancies between the taped interviews and the Internal Affairs report are "of paramount importance in establishing both Harden's guilt or innocence and in the integrity (or lack thereof) of Defendant's investigation of Harden." Dkt. 45 at 17. Such an inference is not warranted in this case because Harden was provided the transcripts of the interviews. *See* Dkt. 53-4. Harden does not assert that the transcripts themselves are not accurate, only the Internal Affairs report. Harden also has not shown that the Sheriff's Department had a duty to preserve the original recordings, nor does he allege that they were destroyed in bad faith to conceal information, which are both required before an inference may be applied. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). In addition, Harden's actual guilt or innocence of the theft is irrelevant to the Court's decision. Therefore, the Court denies Harden's request for an adverse inference of retaliation.

Harden engaged in statutorily protected activity and he suffered an adverse employment action when he was terminated. Harden has presented a sufficient question of fact regarding the second element of his *prima facie* case, which is whether he was meeting the Sheriff's Department's legitimate employment expectations, by presenting the declaration of his supervisor, Nathaniel Neal, stating that Harden was one of his hardest working employees. *See* Dkt. 46-6. However, the Sheriff's Department argues that Harden cannot satisfy the fourth element of his *prima facie* because he cannot show that a similarly situated employee was treated more favorably.

Harden argues that Lt. Frazier was a similarly situated employee because he was also accused of the theft of Rybolt's money, but was not disciplined or terminated. In determining whether an employee is "similarly situated," courts must examine whether the comparators "(1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Coleman*, 667 F.3d at 847 (*quoting Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (internal citations omitted)). "Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that the plaintiffs have met their burden on the issue." *Id.* at 846-47 (internal quotations and citations omitted). "Which factors are material is a case-specific inquiry that depends on the specifics of the defendant's decision and the stated reason for it." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675–76 (7th Cir. 2012).

Harden's *prima facie* case fails because he cannot show that Lt. Frazier was a similarly situated comparator. Lt. Frazier and Harden did not hold the same job descriptions and were not subordinate to the same supervisor. At the time of the theft, Lt. Frazier was a lieutenant/unit

commander assigned to the Civil Division, Public Services, not a building deputy like Harden. Lt. Frazier was not assigned to provide security in the City-County Building, whereas Harden was responsible for these duties. Lt. Frazier and Harden also had different direct supervisors; in fact, Harden was subordinate to Lt. Frazier in the chain of command. Dkt. 39-4 at 7. The only similarity alleged by Harden is that both he and Lt. Frazier were in Room 101 when Rybolt was arrested, and that Rybolt allegedly accused a "colored" officer of stealing his money. However, as stated above, there is no admissible evidence of this alleged accusation, and Rybolt denied accusing or identifying Lt. Frazier, or any other African-American officer, as the deputy who stole his money. Dkt. 39-10 at 3, ¶ 28. Thus, Harden has not presented evidence from which a reasonable jury could conclude that he and Lt. Frazier held the same position, were subject to the same standards, and engaged in the same conduct.

Even if the Court were to accept that Lt. Frazier had also been accused of the theft, the circumstances still would not lead a reasonable jury to find that Harden can prove the fourth element of his *prima facie* case. Aside from the fact that Lt. Frazier and Harden did not hold the same position and were not supervised by the same individual, Harden has also not presented evidence that Lt. Frazier was treated more favorably. The Internal Affairs investigators interviewed all of the individuals who were present in Room 101 at the time of the alleged theft, including Harden and Lt. Frazier; they did not just single out Harden. *See* Dkt. 39-4. Harden argues that the Sheriff's Department did not provide an adequate explanation as to why Lt. Frazier was ruled out as a suspect; however, the reasons for the Sheriff's Department ruling out Lt. Frazier as a suspect are irrelevant. The Sheriff's Department explained in detail in the Internal Affairs investigation report why they suspected Harden of the theft. Again, Harden is asking the Court to act as a "super-personnel department" and review the Sheriff's Department's

investigatory procedure, and to infer that the reason for excluding Lt. Frazier as a suspect must have been based upon the Sheriff's Department's retaliatory animus against Harden, not because the department ultimately concluded that Harden was the more likely culprit based upon their entire investigation. Harden has not presented any evidence in support of this conclusion aside from his own speculation, which will not suffice to defeat a motion for summary judgment. *See Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996) ("Speculation is insufficient to withstand summary judgment; the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts.") (internal quotations omitted).

The Court therefore concludes that Harden cannot satisfy an essential element of his *prima facie* case under the indirect method by identifying a similarly situated employee who was treated more favorably. Because Harden has not shown issues of material fact under either the direct or the indirect method, the Court concludes that summary judgment should be **GRANTED** in favor of the Sheriff's Department.

### IV. CONCLUSION

Because Harden has not presented sufficient questions of fact under either the direct or indirect method of proof for the reasons stated above, the Court **GRANTS** the Sheriff's Department's Motion for Summary Judgment (Dkt. 38) and Harden's retaliation claim under Title VII is **DISMISSED**.

**SO ORDERED.**

Date: 03/04/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

Beth Ann Garrison
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
beth.garrison@indy.gov

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com